# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

JULIEANNE SEES, D.O.,　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiff,　　　　　)
　　　　　　　　　　　　　　　　)
　　　　v.　　　　　　　　　　　)　C.A. No. N22C-09-813 SKR
　　　　　　　　　　　　　　　　)
WILLIAM MACKENZIE, M.D.,　　　　)
NEMOURS CHILDREN'S　　　　　　　)
HOSPITAL & NEMOURS　　　　　　　)
FOUNDATION,　　　　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　　Defendants.　　　　)

## ORDER

Submitted: May 25, 2023
Decided: August 14, 2023

Julieanne Sees, D.O., *Plaintiff, pro se.*

Jennifer Gimler Brady, Esquire & Jennifer Penberthy Buckley, Esquire, Potter Anderson & Corroon LLP, *Attorneys for Defendants The Nemours Foundation and William Mackenzie, M.D.*

**RENNIE, J.**

## INTRODUCTION

A surgeon, who claims to have lost her position with a hospital because she is a female Doctor of Osteopathic Medicine ("D.O."), brought various common-law claims in the Superior Court against her former supervisor and the hospital. The supervisor and the hospital moved to dismiss the surgeon's claims. For the reasons below, the defendants' motion is **GRANTED.**

## FACTUAL AND PROCEDURAL HISTORY

1.      Plaintiff Julieanne Sees ("Plaintiff") is a female D.O. and a pediatric orthopedic surgeon who was employed by Nemours Hospital and Nemours Foundation ("Nemours") from 2012 to 2020.[1] Plaintiff was initially hired as a pediatric orthopedic fellow in 2012 and subsequently as a "Neuro-Ortho" fellow, in 2013.[2] In 2014, she began full-time employment with Nemours under Department Chair William Mackenzie, M.D. ("Dr. Mackenzie")'s supervision.[3] Plaintiff was the only female D.O. in Dr. Mackenzie's department.[4]

2.      Plaintiff alleges that Dr. Mackenzie, as chairman of the department, exhibited a preference for hiring white, Canadian males and repeatedly made discriminatory remarks against women and D.O.'s.[5] These remarks allegedly

---

[1] Pl.'s Compl., ¶¶ 2, 3, 16.
[2] Pl.'s Compl., ¶ 2.
[3] Pl.'s Compl., ¶ 3.
[4] Pl.'s Compl., ¶ 3.
[5] Pl.'s Compl., ¶ 6.

include: "It's going to be really hard for you to be anything as a D.O. and a woman."[6] "[F]emale surgeons are inferior to men."[7] "D.O.'s are not as capable as M.D.'s."[8] "[M]aking Plaintiff [a full-time employee] was the worst decision he [sic] ever made."[9]

3.      Plaintiff further alleges that, during the course of her employment, Dr. Mackenzie discriminated against her despite her commendable performance and dedication.[10] She claims that, from 2016 to 2018, even though she had no performance issues, Dr. Mackenzie attempted to revoke her role as medical director of the orthopedic-rehabilitation unit, and Dr. Mackenzie and the department administrator directed her to use "personal, unpaid time" to perform administrative responsibilities arising from the director role.[11] Plaintiff alleges that, despite her achievements and support from senior surgeons, she was overlooked for consideration of "Division Chief and Endowed Chair" of the cerebral palsy program.[12]

4.      Sometime in 2020, Plaintiff was provided with a Separation

---

[6] Pl.'s Compl., ¶ 7.
[7] Pl.'s Compl., ¶ 6.
[8] Pl.'s Compl., ¶¶ 6, 8.
[9] Pl.'s Compl., ¶ 9.
[10] Pl.'s Compl., ¶¶ 9, 10, 11, 12.
[11] Pl.'s Compl., ¶ 10.
[12] Pl.'s Compl., ¶ 12.

Agreement, which she declined to sign.[13]  The Agreement included a provision, which states: "References and Non-Disparagement.  If Nemours' Department of Human Resources is contacted to verify JULIEANNE SEES' past employment, Nemours will provide her last job title, her date of hire, her last salary, and her status as paid thru Separation Date."[14]

5.      On September 21, 2020, Plaintiff's employment with Nemours was terminated.[15]  Plaintiff claims that the termination was without cause and the result of "rampant misogynistic [sic] and nepotism by Mackenzie, Chair, acting pursuant to the Separation agreement with the stated participation of 'THE NEMOURS FOUNDATION.'"[16]  Plaintiff further asserts that Defendants were "only willing to provide a disastrous 'Reference' to potential future employers," as contemplated in the Agreement.[17]  Plaintiff then claims that, despite her good-faith efforts, she has been unable to secure new employment.[18]

6.      On September 16, 2022, Plaintiff filed a Complaint in this Court against Nemours and Dr. Mackenzie (collectively, "Defendants").[19]  The Complaint asserts

---

[13] Pl.'s Compl., ¶ 14 (Emphasis in the original)
[14] Pl.'s Compl., ¶ 14.
[15] Pl.'s Compl., ¶ 20.
[16] Pl.'s Compl., ¶¶ 20, 30.
[17] Pl.'s Compl., ¶ 14.
[18] Pl.'s Compl., ¶ 17.
[19] The Complaint was e-filed on January 27, 2023.  *See* Pl.'s Compl., at 1.  The docket, however, states that it was "conventionally filed on September 16, 2022." Trans. ID 69010495.

five claims: (1) intentional infliction of emotional distress ("IIED"), (2) negligent infliction of emotional distress ("NIED"), (3) wrongful discharge, (4) tortious interference with contract, and (5) defamation.[20]  On April 3, 2023, Defendants filed a Motion to Dismiss pursuant to Superior Court Civil Rule 12(b)(6).[21]  On May 5, 2023, Plaintiff filed her Response to Defendants' Motion.[22]  In her Response, Plaintiff moved to strike Defendants' Motion based on a purported failure to comply with Superior Court Civil Rule of Procedure 10(b).[23]  On May 11, 2023, Defendants filed a Response to Plaintiff's Motion to Strike.  On May 25, 2023, the Court held Oral Argument, where it denied Plaintiff's Motion to Strike and reserved its decision on Defendants' Motion to Dismiss.

**PARTIES' CONTENTIONS**

7.     Defendants contend that all of Plaintiff's claims should be dismissed for lack of subject matter jurisdiction.[24]  Defendants explain that Plaintiff's claims sound in employment discrimination based on gender and national origin, and, under the Delaware Discrimination in Employment Act ("DDEA"), Plaintiff must exhaust her administrative remedies before bringing these claims in the Superior Court.[25]

---

[20] Pl.'s Compl., ¶¶ 21–38.
[21] *See* Defs.' Mot. to Dismiss.
[22] *See* Pl.'s Opp'n.
[23] *See* Pl.'s Opp'n., ¶ 2.
[24] Defs.' Mot. to Dismiss, at 3.
[25] Defs.' Mot. to Dismiss, at 3.

5

Defendants further contend that Plaintiff's claims are time-barred under the DDEA.[26]

8.   Defendants next assert that Plaintiff's IIED, NIED, and defamation claims are barred by the Delaware Workers' Compensation Act, which provides the sole remedy for work-related injury claims, and/or by the applicable statutes of limitations.[27]

9.   Finally, Defendants assert that, regardless of the jurisdictional or procedural bar, all five claims should be dismissed, because Plaintiff fails to state a valid substantive claim under Superior Court Civil Rule 12(b)(6).[28]

10.   Plaintiff denies that the DDEA is the proper procedural vehicle under which her claims should be considered.[29]   She also claims that her defamation allegations "are far beyond" work-related, and therefore the Workers' Compensation Act does not apply to that claim.[30]   Further, Plaintiff argues that her pleading sets forth "a short and plain statement of the claim" which is enough to survive Defendants' Motion.[31]

---

[26] Defs.' Mot. to Dismiss, at 3.
[27] Defs.' Mot. to Dismiss, at 3.
[28] Defs.' Mot. to Dismiss, at 4.
[29] Pl.'s Opp'n., ¶¶ 5–15.
[30] Pl.'s Opp'n., ¶¶ 16–20.
[31] Pl.'s Opp'n., ¶ 3 (citing Del. Super. Civ. Ct. R. 8(a)).

## STANDARD OF REVIEW

11.     On a motion to dismiss for failure to state a claim upon which relief can be granted under Superior Court Civil Rule 12(b)(6),[32] all well-pleaded allegations in the complaint must be accepted as true.[33] Even vague allegations are considered well-pleaded if they give the opposing party notice of a claim.[34] The Court must draw all reasonable inferences in favor of the non-moving party.[35]

12.     The Court, however, will not "accept conclusory allegations unsupported by specific facts," nor will it "draw unreasonable inferences in favor of the non-moving party."[36] Dismissal is not appropriate unless the "plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[37]

## ANALYSIS

### I.     IIED – Failure to Allege Outrageous Conduct

13.     To state a claim for IIED, a plaintiff must allege "extreme and outrageous conduct" that "intentionally or recklessly" causes severe emotional

---

[32] Del. Super. Ct. Civ. R. 12(b)(6).

[33] *Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978).

[34] *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006) (quoting *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)).

[35] *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006).

[36] *Price v. E.I. DuPont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011) (citation omitted).

[37] *Windsor I, LLC v. CWCapital Asset Mgmt. LLC*, 238 A.3d 863, 871–72 (Del. 2020) (quoting *In re Gen. Motors*, 897 A.2d at 168).

distress.[38] Even if the alleged conduct constitutes "tortious or even criminal" acts toward the plaintiff, it does not necessarily, by itself, rise to the level of "extreme and outrageous conduct."[39] The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."[40] Mere insults or indignities, even by persons abusing their positions of authority over the subject, do not give rise to liability.[41] It is "extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary [for IIED]."[42]

14. Here, Plaintiff alleges discrimination in employment, insults, wrongful termination, and defamation, which do not rise to the level of extreme and outrageous behavior that is contemplated in the caselaw.[43] Thus, these allegations fail to state an actionable IIED claim.

---

[38] *Root v. MaidPro Wilmington*, 2022 WL 17039161, at *3 (Del. Super. Nov. 17, 2022).
[39] *Id.*
[40] *Id.*
[41] Restatement 2nd Torts, Comment (e) § 46.
[42] *Tolliver v. Trinity Parish Foundation*, 2017 WL 3288119 (D. Del. Aug. 2, 2017) (citing *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988)).
[43] *See Tolliver v. Trinity Parish Foundation*, 2017 WL 3288119 (D. Del. Aug. 2, 2017) (stating courts do not perceive terminations of employment, in and of themselves, as evidence of intentional infliction of emotional distress, but rather as common occurrence in the workplace) (internal citations omitted).

**II. NIED – Failure to Allege a Zone of Danger Causing Fear of Safety**

15.   The elements of NIED are: "(1) negligence causing fright to someone; (2) in the zone of danger; (3) producing physical consequences to that person as a result of the contemporaneous shock."[44]  The zone of danger "is that area where the negligent conduct causes the victim to fear for his or her own safety."[45]

16.   Here, the Complaint does not assert any of the elements of a valid NIED claim.  Instead, Plaintiff relies on the same allegations underlying her claim for IIED, undertaken negligently rather than intentionally.  In other words, Plaintiff attempts to prove that Defendants' discrimination, insults, termination, and defamation "negligently" caused her severe emotional distress.  Therefore, because Plaintiff's NIED claim fails to allege that Defendants placed her in the "zone of danger", dismissal is warranted pursuant to Rule 12(b)(6).

**III. Wrongful Discharge – Precluded by the DDEA as "Sole-Remedy"**

17.   The DDEA is the vehicle that provides the "sole remedy for claims alleging a violation of the [DDEA] to the exclusion of all other remedies."[46]  And the statute requires that claims alleging "unlawful employment practice" at the workplace cannot be brought in the Superior Court until all the administrative

---

[44] *Root v. Wilmington*, 2022 WL 17039161, at *4 (Del. Super. Nov. 17, 2022).
[45] *Id.*
[46] 19 *Del. C.* § 712(b).

9

remedies are exhausted.[47]  The claims must be initially filed with the Department of Labor "within 300 days of the alleged unlawful employment practice or its discovery."[48]  These claims include discharging an employee or discriminating against an employee as to "compensation, terms, conditions or privileges of employment" based on gender.[49]  Even when a plaintiff does not specify a DDEA violation, if the claims allege unlawful employment practices defined in the DDEA, those claims must first be brought to the Department of Labor for initial review, not to the Court.[50]

18.     The Complaint alleges that Plaintiff was fired because of her gender and sets forth Dr. Mackenzie's gender-biased statements as support for this allegation.  As discussed, Plaintiff cannot assert a wrongful discharge claim based on gender discrimination outside of the provisions of the DDEA.  Therefore, dismissal is appropriate, for failure to exhaust administrative remedies.

## IV.     Tortious Interference – Fails to Assert Interference by a Third Party

19.     To state a claim for tortious interference with contractual relations, a plaintiff must establish the following elements: "(1) a contract; (2) about which

---

[47] 19 *Del. C.* §§ 711(b)(1), 712(b).
[48] 19 *Del. C.* §§ 712(b), (c)(1).
[49] 19 *Del. C.* § 711(b)(1).
[50] *Yatzus v. Appoquinimink Sch. Dist.*, 458 F. Supp. 2d 235, 248 (D. Del. 2006) (dismissing the common-law claim—breach of covenant of good faith and fair dealing—as the court lacked jurisdiction under the DDEA).

defendant knew; (3) an intentional act that is a significant factor in causing the breach of such contract; (4) without justification; and (5) which causes injury."[51]  In addition, the "intentional act" must be committed by an entity other than  "an agent for a party to [the] contract" because an agent  "cannot interfere with h[is] principal's own contract, provided the agent does not exceed the scope of [his] authority."[52]  In other words, the party who tortiously interferes must be a third party to the contract, as well as "a stranger to the business relationship underpinning the contract."[53]

20.    Here, Plaintiff states that her employment was terminated "without justification" as a result of "rampant misogynistic and nepotism [sic] by [Dr.] Mackenzie, Chair, acting pursuant to the Separation agreement with the stated participation of 'THE NEMOURS FOUNDATION."[54]  The Complaint also states that Dr. Mackenzie fired Plaintiff "with the knowledge, support and approval of [sic] Hospital and Foundation."[55]  These statements clearly show that Dr. Mackenzie fired Plaintiff while acting within the scope of his authority, as an agent of Nemours. Therefore, Plaintiff fails to set forth a valid tortious interference claim.

---

[51] *Colbert v. Goodville Mut. Cas. Co.*, 2011 WL 441363, *1 (Del. Super. Jan. 31, 2011).
[52] *Est. of Carpenter v. Dinneen*, at *7 (Del. Ch. Apr. 11, 2007) (citation omitted).
[53] *See Tenneco Auto., Inc. v. El Paso Corp.*, 2007 WL 92621, *2, 5 (Del. Ch. Jan. 8, 2007) ("[a] party to a contract cannot interfere or conspire to interfere with its own contract").
[54] Pl.'s Compl., ¶¶ 20, 30 (Emphasis in the original).
[55] Pl.'s Compl., ¶¶ 4, 33.

## V. Defamation – Fails to Allege an Actionable Defamatory Statement

21. To state a defamation claim, a plaintiff must plead that: (1) the defendant made a defamatory statement; (2) concerning the plaintiff; (3) the statement was published; and (4) a third party would understand the character of the communication as defamatory.[56] A communication is defamatory "if it tends to so harm the reputation of another as to lower [her] in the estimation of the community or to deter third persons from associating or dealing with [her]."[57] Moreover, "a statement cast as an opinion is actionable [only] if it implies the existence of undisclosed defamatory facts."[58]

22. Here, none of the alleged statements meet the criteria for an actionable statement for defamation. Of the four alleged statements, two were not published to third parties,[59] and two were general assertions not concerning Plaintiff.[60]

23. Finally, even though Plaintiff alleges that Defendants were *only willing*

---

[56] *Agar v. Judy*, 151 A.3d 456, 470 (Del. Ch. 2017) (citing *Doe v. Cahill*, 884 A.2d 451, 463 (Del. 2005) (*en banc*)).
[57] *Spence v. Funk*, 396 A.2d 967, 969 (Del. 1978).
[58] *Cousins v. Goodier*, 283 A.3d 1140, 1156 (Del. 2022) (*en banc*) (citing *Ramunno v. Cawley*, 705 A.2d 1029, 1038 n.34 (Del. 1998)).
[59] The statement, "[i]t's going to be really hard for you to be anything as a D.O. and a woman" was made "to Plaintiff personally". Pl.'s Compl., ¶ 7. And, the statement, "making Plaintiff [a full-time employee] was the worst decision he [sic] ever made" was communicated directly to Plaintiff during her performance evaluation. *Id.* ¶ 9.
[60] "[F]emale surgeons are inferior to men" and "D.O.'s are not as capable as M.D.'s". *Id.* ¶ 8.

12

*to* provide a disastrous reference to future employers,[61] this allegation does not assert that Defendants *did* provide any disastrous reference. Further, the Separation Agreement that supports this allegation merely states that "Nemours will provide her last job title, her date of hire, her last salary, and her status as paid thru Separation Date."[62] No defamatory facts are communicated by those statements. Therefore, the defamation claim is invalid and must be dismissed pursuant to Rule 12(b)(6).

## CONCLUSION[63]

For the foregoing reasons, Defendants' Motion to Dismiss is hereby **GRANTED**.

**IT IS SO ORDERED**, this 14th day of August, 2023.

_____
**Sheldon K. Rennie, Judge**

Original to Prothonotary

---

[61] Pl.'s Compl., ¶ 14.

[62] Pl.'s Compl., ¶ 14.

[63] The Court has granted Defendants' Motion based on Plaintiff's failure to state a claim under Rule 12(b)(6) and Plaintiff's failure to exhaust administrative remedies for her DDEA claims. Hence, the Court need not address Defendant's arguments raised in the Motion regarding Plaintiff's claims being time barred under the DDEA and the Delaware Worker's Compensation Act ("DWCA") and/or the exclusivity of the DWCA.